1   WO

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8

9   David McNulty,                          No. CV-19-00364-TUC-LCK

10                      Plaintiff,           **ORDER**

11  v.

12  Andrew Saul,

13                      Defendant.

14

15          Plaintiff David McNulty filed this action pursuant to 42 U.S.C. § 405(g) seeking

16  judicial review of a final decision by the Commissioner of Social Security (Commissioner),

17  Andrew Saul. (Doc. 1.) Before the Court are McNulty's Opening Brief, Defendant's

18  Responsive Brief, and McNulty's Reply. (Docs. 17-19.) The parties have consented to

19  Magistrate Judge jurisdiction. (Doc. 13.) Based on the pleadings and the administrative

20  record, the decision of the Commissioner is remanded for further proceedings.

21                   **FACTUAL AND PROCEDURAL HISTORY**

22          McNulty was born in 1971 and was 40 years of age at the alleged onset date of his

23  disability. (Administrative Record (AR) 223.) He had past relevant work experience as a

24  bouncer, cashier, construction laborer, and cab driver. (AR 58-61, 249.) McNulty filed an

25  application for Disability Insurance Benefits (DIB) and Supplemental Security Income

26  (SSI) in January 2016. (AR 214-24.) McNulty's application was denied upon initial review

27  (AR 68-107) and on reconsideration (AR 108-24). After a March 14, 2018 hearing (AR

28

1    35-67), the ALJ found McNulty was not disabled. (AR 15-29.) The Appeals Council denied

2    McNulty's request for review of that decision. (AR 1.)

3         The ALJ found that McNulty had severe impairments of degenerative disc disease,

4    affective disorder, and anxiety disorder. (AR 17.) The ALJ determined McNulty had the

5    Residual Functional Capacity (RFC) to perform light-exertion work with the following

6    parameters: lift or carry 20 pounds frequently and 25 pounds occasionally; stand/walk and

7    sit for a total of 6 hours each; occasionally climb ladders/ropes/scaffolds; frequently climb

8    ramps/stairs, balance, stoop, and kneel; and a limit to occasional superficial interaction

9    with the public and coworkers. (AR 20.) The ALJ concluded at Step Five, based on the

10   testimony of a vocational expert (VE), that McNulty could perform work that exists in

11   significant numbers in the economy: janitor, ad materials distributor, and courier

12   messenger. (AR 28.)

13                                   **STANDARD OF REVIEW**

14        The Commissioner employs a five-step sequential process to evaluate SSI and DIB

15   claims. 20 C.F.R. §§ 404.1520; 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-

16   462 (1983). To establish disability the claimant bears the burden of showing he (1) is not

17   working; (2) has a severe physical or mental impairment; (3) the impairment meets or

18   equals the requirements of a listed impairment; and (4) claimant's RFC precludes him from

19   performing his past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the

20   burden shifts to the Commissioner to show that the claimant has the RFC to perform other

21   work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499

22   F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant

23   "disabled" or "not disabled" at any point in the five-step process, he does not proceed to

24   the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

25        "The ALJ is responsible for determining credibility, resolving conflicts in medical

26   testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

27   Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings

28   of the Commissioner are meant to be conclusive if supported by substantial evidence. 42

1      U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a

2      preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v.*

3      *Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to

4      deny benefits only "when the ALJ's findings are based on legal error or are not supported

5      by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033,

6      1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve

7      conflicts in the evidence, and if the evidence can support either outcome, the court may not

8      substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson*

9      *v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

10     1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed

11     simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143

12     F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir.

13     1989)). Reviewing courts must consider the evidence that supports as well as detracts from

14     the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

15                                          **DISCUSSION**

16            McNulty alleges the ALJ failed to evaluate the opinion of social worker Allison

17     Davis. McNulty clarified that he is challenging the ALJ's findings only as to his mental

18     limitations in the instant appeal (Doc. 17 at 3); therefore, the Court does not discuss the

19     ALJ's findings regarding his somatic impairments.

20            **Background**

21            On March 10, 2015, after a meeting with McNulty, social worker Davis discharged

22     him from a Compensated Work Therapy (CWT) program run by the VA. (AR 969.) At that

23     time, she offered the following assessment:

24            Veteran is not able to accept feedback and is unable to see the areas in which
              he needs to improve. He clearly feels that writer and supervisor are picking
25            on him. Veteran will not be able to benefit from the program if unable to take
              direction and feedback about performance.
26
       (*Id.*) Davis recommended anger management or life skills groups for McNulty. (*Id.*) After
27
       a follow-up meeting, Davis stated that McNulty "appears to have unrealistic expectations
28

                                              - 3 -

1   about getting feedback in employment situation as he feels that he should be thanked and

2   patted on the back when he does what is expected of him." (AR 959.)

3        McNulty quoted this testimony from Davis in a pre-hearing brief and argued to the

4   ALJ that his inability to accept direction or criticism from supervisors, due to his mental

5   health issues, was a major barrier to employment. (AR 317.) At the hearing, the ALJ asked

6   McNulty about his experience in the CWT program. (AR 43-46.) McNulty acknowledged

7   that his supervisors complained about his job performance, including sleeping on the job

8   and leaving early. (AR 45.) McNulty further testified that when he was confronted about

9   these issues, he argued about it because he disagreed with what they said to him, they did

10  not give him positive feedback, and he felt they treated him unfairly. (AR 46.) In response

11  to a question from McNulty's attorney, the VE testified that if a claimant "cannot be around

12  any supervisors or co-workers at all, and they can't take any supervision at all, maybe the

13  individual would tend to have outbursts . . . then that might impact their ability to maintain

14  competitive work without a special accommodation . . .." (AR 63.) The VE also opined

15  that a person could not work if "an individual had a marked limitation, so at least 50 percent

16  of the time they would not interact appropriately with supervisors." (AR 64.) Further, the

17  behaviors Davis documented would be unacceptable if they occurred at a marked level.

18  (AR 64-65.)

19       In her decision, the ALJ summarized McNulty's testimony as, "[h]e stated he

20  worked in a clothing room for VA vocational rehabilitation and supervisors complained

21  about him leaving early, and he was unable to work in a competitive environment." (AR

22  21.) The ALJ did not mention Davis's opinion nor discuss McNulty's ability to interact

23  appropriately with supervisors.

24       **Analysis**

25       An ALJ is required to consider lay witness evidence about the severity of a

26  claimant's impairments, his daily activities, restrictions, and his ability to work. 20 C.F.R.

27  §§ 404.1513(d)(4), 416.913(d)(4); *Stout v. Comm'r Soc. Sec. Admin.* 454 F.3d 1050, 1056

28

1    (9th Cir. 2006). Rejection of such testimony requires an ALJ to provide reasons germane

2    to each witness. *Stout*, 454 F.3d at 1056.

3    First, Defendant argued that Davis's statements in her progress notes did not qualify

4    as a medical opinion or lay witness testimony. Davis's statements are not a medical

5    opinion, and the Court does not treat them as one. Although McNulty cited the regulatory

6    definition of a medical opinion, he requests that Davis's testimony be evaluated as that of

7    a lay witness. (Doc. 17 at 7-8.) With regard to treating Davis's statements as relevant lay

8    witness testimony, Defendant argued only that an ALJ need not discuss every reference in

9    the record to a claimant's functioning. Although this record is large, the ALJ was alerted

10   to Davis's statements prior to the hearing, she questioned McNulty about the negative

11   feedback he received from his CWT supervisors, and McNulty's attorney questioned the

12   VE with hypotheticals derived from Davis's statements. Thus, the ALJ was aware, and

13   acknowledged the significance, of this evidence. Because no other evidence considered by

14   the ALJ discussed McNulty's ability to respond appropriately to supervision, this evidence

15   was significant and probative. *Cf. Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012

16   (9th Cir. 2003) (finding a medical review was not significant and probative because ALJ

17   discussed the report that formed the basis for that review).

18   Second, Defendant argued that medical records documented McNulty's cooperative

19   and polite demeanor, which was an adequate basis for the ALJ to reject Davis's testimony.

20   (Doc. 18 at 16, 18.) Behaving in a sociable manner at medical appointments does not mean

21   an individual has the ability to accept supervisory feedback and direction. Further, the ALJ

22   did not reject Davis's testimony based on the medical record or any other reason. *See*

23   *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) ("We review only the reasons

24   provided by the ALJ in the disability determination and may not affirm the ALJ on a ground

25   upon which he did not rely.")

26   Third, Defendant argued that the ALJ considered McNulty's testimony about

27   working in the CWT program. The ALJ's summary of McNulty's testimony on this topic

28   acknowledged only that he was reprimanded for leaving early and, generally, could not

1   maintain competitive employment. (AR 21.) The ALJ did not address McNulty's ability to

2   accept supervisory criticism either through discussion of his testimony or by considering

3   Davis's testimony.

4          Finally, Defendant argued that Davis's testimony did not directly correlate to the

5   hypothetical McNulty's attorney posed to the VE. While true, McNulty has not asked the

6   Court to credit as true Davis's testimony and award benefits. Instead, he requests a remand

7   for further proceedings. Because the ALJ failed to consider Davis's testimony, she erred.

8   *See Stout*, 454 F.3d at 1054 (finding error when ALJ made passing reference to lay witness

9   testimony but failed to mention testimony specific to claimant's ability to work); *Bruce v.*

10   *Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (reversing because ALJ failed to provide

11   legitimate reasons for rejecting testimony of claimant's wife regarding his ability to work).

12          This error will be found harmless if it would not have altered the outcome of

13   McNulty's case. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir.

14   2008) (finding error harmless if it was "inconsequential to the ultimate nondisability

15   determination") (quoting *Stout*, 454 F.3d at 1055). However, "a reviewing court cannot

16   consider [an] error harmless unless it can confidently conclude that no reasonable ALJ,

17   when fully crediting the testimony, could have reached a different disability

18   determination." *Marsh v. Colvin*, 792 F.3d 2170, 1173 (9th Cir. 2015) (quoting *Stout*, 454

19   F.3d at 1055-56). "[T]he burden of showing that an error is harmful normally falls upon

20   the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409

21   (2009).

22          Defendant did not argue any error regarding Davis's testimony was harmless, and

23   the Court concludes it was not. The testimony from Davis was unique because no other

24   evidence of record evaluated McNulty's ability to respond appropriately to supervision.

25   No treating or examining mental health professional provided a medical opinion of

26   McNulty's functional abilities. And, because the reviewing psychologists found no severe

27   impairments and only mild limitations, they did not evaluate McNulty's RFC. (AR 87-90,

28   103.) The ALJ rejected the reviewers' findings, in part, and found two severe mental health

1    impairments and a moderate limitation in social functioning. (AR 17, 19.) In finding a

2    moderate limitation, the ALJ appeared to rely solely upon McNulty's testimony. (AR 19,

3    27.)[1] McNulty testified that he had been reprimanded for his job performance in the CWT

4    program; however, he believed the problem lay with the supervisors not his performance

5    or response to the supervisory feedback. (AR 46.) Therefore, the ALJ did not evaluate

6    whether or how the evidence from Davis would impact his ability to work. And, the ALJ

7    included in the RFC only a limitation with respect to the public and coworkers, but none

8    with respect to interacting with supervisors. In light of the VE's testimony, that a

9    significant limitation in responding appropriately to supervision would preclude all

10   employment, Davis's testimony could have impacted the ALJ's disability determination.

11   Therefore, the error was not harmless. Upon remand, the ALJ must consider Davis's

12   testimony and further develop the record as needed.

13        Accordingly,

14        **IT IS ORDERED** that this case is remanded to the ALJ for a new hearing and

15   further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court

16   should enter judgment and close this case.

17        Dated this 3rd day of September, 2020.

18

19   _Lynnette C. Kimmins_
     _____

20        Honorable Lynnette C. Kimmins
          United States Magistrate Judge

21

22   _____

23   [1] When evaluating McNulty's ability to interact with others at Step Three, the ALJ
     stated that: "He exhibited the ability to cooperate, ask for help when needed, and state her

24   [sic] own opinion. He was able to understand and respond to social cues; respond to
     requests, suggestions, criticism, correction and challenges; and keep social interactions free
     of excessive irritability, sensitivity, argumentativeness or suspiciousness." (AR 19.) She

25   also found McNulty "capable of responding to demands . . .[and] distinguishing between
     acceptable and unacceptable work performance." (*Id.*) The ALJ provided no citation for

26   these findings, and her opinion offers no support for them. The Defendant did not rely upon
     them or identify any record evidence to support such conclusions. Given the ALJ's use of

27   the wrong pronoun and the absence of any functional evaluations in the record, it is possible
     this language was erroneously copied from another decision. Because there is not

28   substantial evidence to support these findings, they do not impact the Court's evaluation
     of the ALJ's failure to consider Davis's testimony.